JOHN J. KNOBLE AND SERGIO INTRONA, APPELLANTS, v. WATERFRONT COMMISSION OF NEW YORK HARBOR, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1974—Decided December 30, 1974.

Before Judges LORA, HANDLER and TARLETON.

*Mr. John P. Croake* argued the cause for appellants (*Messrs. Lum, Biunno and Tompkins,* attorneys; *Mr. Joseph R. McMahon* of counsel).

*Mr. Charles J. Harrington, Jr.* argued the cause for respondent (*Messrs. Irving Malchman and Richard P. Cohen* on the brief).

PER CURIAM. These are appeals from orders of the Waterfront Commission revoking and denying appellants' licenses as port watchmen (security officer and pier guard). The effective dates of these orders have been stayed by the commission pending disposition of these appeals.

John J. Knoble was a day supervisor, Sergio Introna a night supervisor and Richard H. Roed (not involved in these appeals) a pier guard for McRoberts Protective Agency, Inc., at piers A, B and C in Hoboken, New Jersey. Roed, who was Knoble's son-in-law and had a full-time day job at Electric Service Repair Center in Hawthorne (40 minutes by car from the piers) worked the 4 P.M. to midnight shift at piers A, B and C as a pier guard. Knoble made up the payroll time sheets for McRoberts in draft form and gave them to Introna who prepared the time sheets in final form.

A Commission investigation disclosed that between June 28, 1971 and October 16, 1971, Roed was absent from his duties on the piers for a total of 136 hours but was paid $444.50 for this work he did not actually perform. The schedule prepared to show this discrepancy was based upon Roed's time cards at Electric Service Repair, the logbook of the Commission in which each port watchman is required to sign his times in and out, and the payroll time sheets of McRoberts that were prepared by Knoble and Introna.

Knoble and Introna were charged with falsely recording Roed's working at times when he was not physically present. This factual background was not disputed by appellants. Based upon these facts the Commission concluded Knoble and Introna had misappropriated property by means of false and fraudulent misrepresentations and pretenses to their employer, an offense under *N. J. S. A.* 32:23-93, and had demonstrated a lack of good character and integrity which

was cause to revoke or suspend their licenses under *N. J. S. A.* 32:23–41.

Defendants contend that the conduct in question does not demonstrate a lack of good character and integrity within the meaning of the Waterfront Commission Act; that *N. J. S. A.* 32:23–93(2) (misappropriation of any other person's property) does not encompass the conduct in question, and that the decision to revoke and deny their licenses was unreasonable, arbitrary and capricious.

It is defendants' position that the "good character and integrity" provisions of the act were designed only to bar from waterfront employment gangsters, racketeers, hoodlums and ex-convicts who carried on extortion, pilferage, loan-sharking, gambling, violent assaults and bombings, as well as persons who have been convicted of crime, are notorious hoodlums; have criminal records or perhaps, have been indicted for serious crime. They argue that neither the act nor its surroundings or objectives suggest that the "good character and integrity provisions" were intended for use as the basis of severe disciplinary measures against waterfront employees for conduct violative of the employment re-. lation, but not specifically proscribed by the act nor the subject of any arrest, indictment or conviction. Furthermore, they assert they do not fit the description of the undesirables to whom the act was meant to deny employment.

*N. J. S. A.* 32:23–41 provides no license for a port watchman shall be granted "unless the Commission shall be satisfied that the applicant possesses good character and integrity." *N. J. S. A.* 32:23–44(a) permits revocation or suspension of a license for "conviction of a crime or other cause which would permit or require his disqualification from receiving a license upon original application."

As respondent points out in its brief, the New York State Crime Commission in its *Fourth Report,* Leg. Doc. No. 70 (1953), which led to the enactment of the Waterfront Commission Act, extensively discussed the regulating of port watchmen. They found the degree of pilferage and other

lawlessness on the docks required that, in the public interest, the independence and caliber of the men employed as port watchmen should be substantially improved and that the same considerations which motivated the licensing of private detectives and investigators mandated the licensing of port watchmen. It was also suggested that, among other requirements, no person be so licensed who fails to meet reasonable requirements as to intelligence, physical condition, age and moral character.

 It is clear the policy behind the statutory scheme regulating activities on the New York waterfront is applicable to security officers and port watchmen. Consequently, an offense or conduct demonstrating lack of good character or integrity may, in proper circumstances, be the basis for disciplinary proceedings, and the same standards that control the granting of the application for the license apply with equal force in a proceeding for the revocation of the license "for cause." *Cf. In re Berardi*, 23 *N. J.* 485, 490–491 (1957).

The statutory standards of "good character and integrity" have been applied on many occasions by the Waterfront Commission to misconduct similar to that proved in this case, *i. e.*, payroll padding or overbilling. See, *e. g.*, *C. C. Lumber Co., Inc. v. Waterfront Comm'n*, 31 *N. Y.* 2d 350, 339 *N. Y. S.* 2d 937, 292 N. E. 2d 1 (Ct. App. 1972); *Di Bella v. Waterfront Comm'n of New York Harbor*, 39 *A. D.* 2d 653, 331 *N. Y. S.* 2d 726 (App. Div. 1973); *Continental Terminal Operating Corp. v. Thompson*, 16 *A. D.* 2d 952, 229 *N. Y. S.* 2d 981 (App. Div. 1962); *McNamara v. Waterfront Comm'n of New York Harbor*, 11 *A. D.* 2d 1017, 206 *N. Y. S.* 2d 479 (App. Div. 1960).

 In view of all of the foregoing it is our conclusion that appellants, by their conduct, demonstrated a lack of good character and integrity within the comprehension of the Waterfront Act and thereby subjected themselves to these disciplinary proceedings.

Having concluded that appellants' conduct demonstrated a lack of good chaarcter and integrity within the meaning of the Waterfront Commission Act, we deem it unnecessary to determine whether said conduct constituted a misappropriation of property in contravention of *N. J. S. A.* 32 :23–93(2).

Finally, appellants contend the Commission's decision to revoke and deny their licenses was so harsh as to be unreasonable, arbitrary and capricious.

Our review of the record reveals that Knoble, who was 55 years old at the time of the hearing, is married, has three grown children and has never been convicted of a crime. He has been employed by McRoberts and licensed by the Commission for 16 years. His only other disciplinary action occurred about ten years ago and involved his not wearing a hat or badge on the job.

Sergio Introna, who was then 35 years of age, is married and has three small children. He, too, has worked for 16 years for McRoberts and been licensed by the Commission during that time. His previous violations consisted of driving a car on a pier, contrary to regulations, and calling on his men to bring some cardboard boxes to his home to cover up windows blown out by an explosion. He has never been convicted of a crime.

It is noted there was no evidence that the appellants had benefitted financially or otherwise from their actions. Rather, they sought only to help Knoble's young son-in-law Roed make some extra money.

▮ While we are mindful that the area is a sensitive one, that the offense was serious and willful, and demonstrated a lack of good character and integrity, it is our conviction that in the light of all of the circumstances of the case, revocation and denial of their licenses was unduly severe and, therefore, arbitrary and unreasonable. The records of these appellants over a 16-year period are otherwise unblemished except for the minor transgression of Commission regulations by Introna set forth above. There is no suggestion that

there would be any further offenses if the respective licensees were punished severely short of license revocation or denial.

We are satisfied this is an appropriate case for judicial imposition of a lesser penalty. *Mayflower Securities v. Bureau of Securities,* 64 *N. J.* 85, 93 (1973). Accordingly, the penalties of revocation and denial of license are vacated and appellants' licenses are ordered to be suspended for a period of one year from the date of this opinion.